**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 12th day of January, 2018.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

**In re:**

**Sharon Eileen Schmidt,**    Case No. 16-22464-13
      **Debtor.**

_____

**Sharon Eileen Schmidt,**
      **Plaintiff,**

  **vs.**    Adv. No. 17-6032

**Bank of America, N.A.,**
      **Defendant.**

_____

**Sharon Eileen Schmidt,**
      **Plaintiff,**

  **vs.**    Adv. No. 17-6033

**Bank of America, N.A.,**
      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
## AND DENYING CONFIRMATION OF CHAPTER 13 PLAN

Defendant Bank of America, N.A. has not done itself any favors with its actions in Debtor Sharon Eileen Schmidt's Chapter 13 bankruptcy case. When Debtor initially filed her case, her proposed plan provided for pro-rata payment through her plan of a first mortgage to Bank of America, to whom she claimed she owed $38,913.05. Debtor's proposed plan also acknowledged a second and third mortgage with Bank of America, for $11,105.94 and $24,738.03, respectively, but did not provide for payment of those debts and stated that the liens would be stripped. And Bank of America seemingly confirmed Debtor's understanding of their lending transactions, as Bank of America thereafter filed three separate claims in Ms. Schmidt's bankruptcy case, one for $37,706.59 (claim 16), one for $9453.31 (claim 5), and one for one $24,528.12 (claim 6).

Imagine Debtor's surprise when Bank of America then objected to Debtor's proposed Chapter 13 plan, arguing that the three claims really represented three different payment plans stemming from one "parent" mortgage, and claiming that the two "child" claims could not be stripped from the "parent" mortgage securing the property. In response, Debtor filed the two adversary proceedings captioned above, seeking to treat Bank of America's second and third "child" claims as junior unsecured mortgages that Debtor could then strip off.

Bank of America has moved for summary judgment on Debtor's complaints. Although Bank of America has complicated the issue with its confusing separate billing practices and three separate proofs of claim, the unmistakable and unchallenged contract language leads the Court to conclude that the liens in question are all part of the larger single mortgage, secured by a security

interest in Debtor's principal residence, and therefore not subject to strip off under 11 U.S.C. §§ 502(a) and 1322(b)(2).[1] As a result, Bank of America's motions for summary judgment are granted, and Debtor must amend her plan accordingly.

I.      **Findings of Fact**

Debtor filed her petition for Chapter 13 bankruptcy protection on December 17, 2016, and proposed her plan for the repayment of her debts on the same date.[2] Bank of America filed three proofs of claim—claims 5, 6, and 16. Claims 5 and 6 represent fixed rate portions of the loan that Bank of America refers to as the two "child" loans, while claim 16 reflects the variable rate portion of the loan that Bank of America refers to as the "parent" lending arrangement. At the time the claims were filed, claim 5 was for $9,453.31 at 6 percent interest; claim 6 was for $24,528.12 at 10.14 percent interest, and claim 16 was for $37,706.59 at a variable rate of interest of 4.990 percent when it was filed on February 20, 2017.[3] Debtor's plan proposed to pay the "parent" loan pro rata through her plan and to strip off the two "child" loans.

After Bank of America objected to this proposed plan treatment, Debtor then filed the two adversary cases captioned above, seeking to strip off the two "child" liens held by Bank of America as wholly unsecured junior mortgages.[4] In adversary proceeding 17-6032, Debtor seeks a determination that Bank of America is not entitled to secured status for the mortgage of

---

[1] Unless otherwise indicated, all additional statutory references will be to the Bankruptcy Code, Title 11 of the United States Code.

[2] Case No. 16-22464, Doc. 1 and Doc. 6.

[3] Bank of America has filed several Notices of Mortgage Payment Change since filing the original Proof of Claim, reflecting changing interest rates.

[4] Adv. No. 17-6032; Adv. No. 17-6033.

2018.01.12 AP 17-6032-6033 Schmidt v BoA.wpd

$24,528.12, which Debtor terms HELOC #3; it is preceded by a first mortgage, also from Bank of America, of $37,706.59, against a house Debtor values at only $25,000. This corresponds to Bank of America's claim 6, which references an account ending in 9702. In separate adversary proceeding 17-6033, Debtor seeks the same determination as to her debt of $9,453.31 to Bank of America, which Debtor terms HELOC #2. This corresponds to Bank of America's claim 5, which references an account ending in 9701.[5]

Bank of America moved for summary judgment on both complaints, and the documents supporting its motions indicate that Debtor obtained a home equity line of credit from Bank of America in 2003, with a credit limit of $55,811 at a variable rate of interest (the "Note").[6] The line of credit was secured by a mortgage on Debtor's principal residence, which Bank of America recorded with the Wyandotte County Register of Deeds.[7] There were no other encumbrances on the property.[8]

In 2007 the original credit agreement was modified, with the credit limit being increased to $75,000.[9] Debtor's line of credit was increased to $75,000. The mortgage was modified to

---

[5] Confusingly, in the opening paragraphs of both of Debtor's complaints, Debtor seeks a declaration that Bank of America is not entitled to secured status for "the junior mortgage of $20,477.30." However, the body of each complaint references loans with dollar amounts that correspond to Bank of America's proofs of claim 5 and 6, as detailed above. It is unclear where this $20,477.30 figure came from, as it does not appear in any of the other pleadings or filings in any of the associated cases.

[6] Bank of America Exhibit A (Bank of America Equity Creditline Agreement and Disclosure Statement).

[7] Bank of America Exhibit B (Mortgage).

[8] Debtor Exhibit 1 (Affidavit of Debtor).

[9] Bank of America Exhibit C (Bank of America Equity Maximizer Agreement and Disclosure Statement).

reflect the new arrangement and was recorded with the Wyandotte County Register of Deeds.[10]

The Note contains a provision allowing Debtor to convert a portion of the loan to a fixed rate of interest.[11] The provision specifies that Debtor may convert all or part of the variable rate principal balance to a fixed rate option and that the maximum term of any fixed rate option may not exceed the original repayment term of the line of credit. Additionally, the Note provides: "Fixed Rate Option payments will be billed separately from your Regular Payment in accordance with the schedule you have arranged. For Fixed Rate Options, you will receive a separate bill. However, the Variable Rate Balance statement will show all activity, including payments."

Debtor exercised this option twice, converting portions of her overall balance to a fixed rate option on two separate occasions.[12] Billing statements provided by both parties show that Bank of America sent billing statements reflecting the total balance due to it by Debtor, as well as the balance for the variable rate portion and the two fixed rate portions. Bank of America also sent Debtor separate billing statements for the two fixed rate loan options.

II.     Analysis

    A.     **Legal Standard for Assessing Motions for Summary Judgment**

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment if the

---

[10] Bank of America Exhibit D (Modification of Security Instrument).

[11] Bank of America Exhibit A, p.8.

[12] Bank of America Exhibit E (Affidavit of Roseann Bancroft, Assistant Vice President of Bank of America). No dates are given by either party for these actions. Debtor generally refers to the first half of 2007 and 2008 for the time frame.

2018.01.12 AP 17-6032-6033 Schmidt v BoA.wpd

movant shows there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.[13] An issue is genuine if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[14] Material facts are those that are "essential to the proper disposition of [a] claim" under applicable law.[15] The party moving for summary judgment bears the initial burden of proof to show an absence of genuine issues of material fact.[16] When analyzing summary judgment, the Court will draw all reasonable inferences in favor of the non-moving party.[17] In the absence of any material factual controversy, the Court will focus on the legal aspect of the argument, and whether the undisputed material facts establish as a matter of law that the movant's position is correct.[18]

### B. Lien Stripping in Chapter 13

Bank of America argues that the debt in question is a single debt, despite having been administratively divided into three portions. Debtor argues that the debts are three separate loans, each with different dates of origin, amounts tendered, and terms.

A lien that is secured by a security interest in real property that is Debtor's principal residence, even if the outstanding balance is greater than the value of the property, may not be

---

[13] Rule 56 is incorporated and applied to bankruptcy courts via Federal Rule of Bankruptcy Procedure 7056.

[14] *Thom v. Bristol-Myers Squibb Co.* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[15] *Id.*

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[17] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

[18] *Kimball v. United States Small Bus. Admin. (In re Kimball)*, No. 07-12276, Adv. No. 16-5105, 2017 WL 2110777, at *2 (Bankr. D. Kan. May 12, 2017).

divided into secured and unsecured portions under §§ 506(a) and 1322(b)(2).[19] If, however, a junior mortgage is wholly unsupported by value in the collateral, it may be treated as unsecured under §§ 506(a) and 1322(b)(2).[20]

Therefore, if the debt in question is a single debt, secured by a security interest in Debtor's principal residence, then it may not be modified per § 506(a) and § 1322, and summary judgment in favor of Bank of America would be appropriate. If, however, the debt is three separate mortgages, the junior mortgages would be subject to stripping, if they were wholly unsecured. The value of the property at issue has not been addressed by either party at this stage. Rather, Debtor disputes the conclusion to be drawn from the facts presented as to whether the debt is a single debt, or three separate mortgages.

    C.    **Bank of America's Claims Stem from a Single Mortgage.**

The question of the "identity" of the debt(s) at issue can be resolved by looking to the terms of the documents themselves, to which there is no dispute.[21] Debtor does not argue that the terms of the parties' contracts as presented by Bank of America are incorrect; Debtor's argument is instead that her recollection or perception of those documents differs, supported primarily by the fact that she received three separate statements each month from Bank of America, each with different due dates for payment.

Turning to basic contracting principles, however, the actual documents Debtor signed,

---

[19] *In re Werts*, 410 B.R. 677, 685-86 (Bankr. D. Kan. 2009).

[20] *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328–31 (1993); *Woolsey v. Citibank, N.A. (In re Woolsey)*, 696 F.3d 1266, 1279 (10th Cir. 2012) (disallowing lien strip-off under § 506(d) but commenting favorably on continued use of § 1322(b)(2) as vehicle for lien strip-off).

[21] "Under Kansas law, the construction of a written contract is a matter of law for the court." *Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 843 (D. Kan. 1999).

- 7 -
2018.01.12 AP 17-6032-6033 Schmidt v BoA.wpd

Case 17-06032    Doc# 34    Filed 01/12/18    Page 7 of 11

and not her perception, are what control.[22] The instruments the parties bargained for are to what this Court must give effect.[23] Here, the terms of the original Note Debtor signed with Bank of America allowed Debtor to convert portions of her original, variable rate loan, into a fixed interest rate loan, and disclosed that the fixed rate portions would each have individual, separate billing statements. The Note also indicated that the "Variable Rate Balance statement will show all activity, including payments."[24]

That contemplated scenario is exactly what actually transpired. Debtor converted two portions of her contracted principal to fixed rate options, as per the terms of the Note. The billing statements provided by both parties show that Debtor received three billing statements, one of which indicated the overall indebtedness but also divided that amount into three distinct portions, and two separate billing statements that reflected only the fixed rate portions of the indebtedness.

The fixed rate portions of the debt were provided for in the original Note and the modified note entered when Debtor increased her credit limit. Significantly, these Notes were perfected by a security interest in Debtor's principal residence, which was recorded in

---

[22] *Id.* ("Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parol evidence.").

[23] *United States v. Stoeber*, 242 F. Supp. 2d 1026, 1029 (D. Kan. 2003) (analyzing the contract law of Kansas, and concluding that the intent of the parties and the meaning of the contract itself should be determined by the written terms thereon, and that the reasonable interpretations of those terms control).

[24] Bank of America Exhibit A. This original line of credit was modified in 2007, increasing the line of credit to $75,000. The "Equity Maximizer Agreement" document contained virtually identical language regarding the option to convert portions of the balance to a fixed rate option. Bank of America Exhibit C.

Wyandotte County. There is one Note, and one mortgage, and the three portions of the outstanding balance are secured by a single security interest. The fact that Debtor and Bank of America chose to treat certain portions of the debt in unique ways was contemplated for, and allowed by, the agreement freely entered into by the parties, and nothing in the agreements indicates that exercise of the fixed-rate option severs the fixed rate portions from the overall mortgage. As Bank of America points out in its memoranda in support of its motions for summary judgment, "It is no different than a store credit card that offers a promotional rate for a particular purchase and another rate for non-promotional purchases." Indeed, the Court routinely sees such arrangements between debtors and creditors.

The terms of the Note that the Court just detailed are not ambiguous. The only argument Debtor makes is that the three billing statements led her to believe that she had three separate loans. But the express language of the parties' contract provided for separate billing statements for the different portions of the one loan. So, yes, Bank of America does not do itself any favors with this billing style and certainly did not make things any easier by filing three separate proofs of claim, but the language of the Note is clear and it controls. "When the language of the contract is clear and can be carried out as written, there is no room for construction or modification of its terms."[25] And although reasonable inferences must be granted in favor of Debtor as the non-movant, Debtor may not simply create a disputed issue of genuine material fact with a bare statement that a disputed fact exists. If the pleadings, depositions, answers to interrogatories, admissions, or affidavits demonstrate the absence of genuine issues of material fact, summary

---

[25] *Liberty Mut. Fire Ins. Co. v. The Clemens Coal Co.*, 250 F. Supp. 3d 825, 832 (D. Kan. 2017).

- 9 -
2018.01.12 AP 17-6032-6033 Schmidt v BoA.wpd

Case 17-06032    Doc# 34    Filed 01/12/18    Page 9 of 11

judgment is appropriate.[26]

**III. Conclusion**

The pleadings, exhibits, and affidavits demonstrate there is no disputed genuine issue of material fact, and judgment here is appropriate as a matter of law. As a matter of law, Bank of America's claims 5, 6, and 16 in Debtor's Chapter 13 bankruptcy case are parts of a single loan, secured by one mortgage on Debtor's primary residence. Therefore, Debtor's complaints seeking a determination that claims 5 and 6 are unsecured are unfounded, and summary judgment is appropriate in favor of Bank of America in both adversary proceedings. In addition, Bank of America's objection to confirmation of Debtor's proposed plan is sustained, and Debtor shall amend her plan within 30 days to provide for the additional claims.

IT IS THEREFORE ORDERED that the objection to confirmation filed by Bank of America in Debtor's Chapter 13 bankruptcy case[27] is sustained. Debtor shall amend her plan accordingly within 30 days of the date of this Order.

IT IS FURTHER ORDERED that the motions for summary judgment filed by Bank of America in Debtor's adversary proceedings[28] are both granted. Judgment is entered against Debtor Sharon Eileen Schmidt, and in favor of Defendant Bank of America, on Plaintiff's complaints.

IT IS SO ORDERED.

###

---

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[27] Case No. 16-22464, Doc. 22.

[28] Adv. No. 17-6032, Doc. 29; Adv. No. 17-6033, Doc. 27.

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS